SHEFFEY v. VINT. See Case No. 16,950.

SHEFFIELD v. FOSTER. See Case No. 12,-743.

## Case No. 12,743.
### SHEFFIELD v. PAGE.
### SAME v. FOSTER.
Spr. 285;[1] 18 Law Rep. 99.]

District Court, D. Massachusetts. April, 1855.[2]

EVIDENCE—PAROL—CONTRACTS—SEAMEN —WAGES —RECOVERY—MEASURE OF DAMAGES.

1. Where there is a contract, in writing, purporting on its face to contain the whole agreement relative to its subject-matter, parol evidence is not admissible, to prove that a part of the entire contract was omitted.

2. But where the written contract is incomplete on its face, and tacitly refers to parol evidence, such evidence may be admissible.

3. And where a mate had signed shipping articles, for a voyage from San Francisco to Calcutta, in which nc rate of wages was named, parol evidence was admitted, to show that his contract was for a voyage from San Francisco to Boston, via Calcutta, for a certain rate of wages per month.

4. The mate having been wrongfully discharged at Calcutta, and not being able to obtain a situation as mate, came to Boston before the mast: and the court allowed him his expenses and wages, till he reached Boston, without deducting what he earned before the mast.

[Cited in The Cornelia Amsden, Case No. 3,-234; Worth v. The Lioness No. 2, 3 Fed. 925.]

5. A libel was brought by him against an owner, for his wages to Boston, and one against

1 [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

2 [Affirmed in Case No. 10,667.]

the master, to recover damages for his discharge; but it not appearing that the master had done any wrong or injury to the mate, in discharging him, except that necessarily resulting from a violation of the contract: it was *held*, that he could recover in one suit only, and might recover all he was entitled to, on account of such discharge, against the owner, and the libel against the master was dismissed.

These two cases were heard together. The first was a libel against a part-owner of the ship Uriel, to recover wages, as first mate, from San Francisco, via Calcutta, to Boston, at $50 per month, from June 20th, 1851, to April 26th, 1852; the second, a libel against the master of the Uriel, to recover damages, for a wrongful discharge of the libellant, at Calcutta. In June, 1851, the libellant shipped in the Uriel, at San Francisco, as first mate, for a voyage, as he alleged, from San Francisco, via Calcutta, to Boston; but, as the respondents contended, only to Calcutta. On the arrival of the Uriel at Calcutta, the libellant was discharged by the master, and came home in another vessel, before the mast, receiving for his services, in such other vessel, the sum of $60; and the libel against the owner, was brought to recover his wages to the time of his arrival at Boston, with certain expenses at Calcutta. The respondents alleged that the libellant had signed shipping articles, for a voyage to Calcutta only, and objected to the admission of parol evidence to show that his contract was for a voyage to Boston. A copy of the articles, brought by the master from San Francisco, and certified by the deputy collector of that port, was produced by them, which did not contain the libellant's name; but another copy was also offered in evidence, subsequently obtained from San Francisco, which did contain his name. Neither copy contained any statement of the rate of wages to be paid to him.

R. H. Dana, Jr., and Geo. S. Hale, for libellant.

F. H. Allen, for respondent.

SPRAGUE, District Judge. Several questions arise in this case. 1st. Were any articles signed by the libellant? 2d. If so, for what voyage? And 3d. If for the voyage alleged by the respondents, can parol evidence be admitted, to show that the parties contracted for a voyage to Boston, via Calcutta; and what effect shall be given to that evidence? On the whole, I think there is satisfactory evidence, that the articles were signed; and I think the articles signed were for a voyage to Calcutta, as claimed by the respondents.

Is parol evidence, then, admissible to show a contract for a voyage to Boston? The argument urged is, that the articles do not contain the whole contract, and are not inconsistent with evidence of a contract to continue the voyage to Boston, after arriving at Calcutta. And there is certainly plausibility in this view. The cases upon this subject are so numerous, and so various, that perhaps it

is not easy to reconcile all of them; yet the true principle is not difficult of discovery.

An agreement, distinct from that contained in the writing, can, of course, be proved by parol; but nothing can be introduced to change the written contract; and if the whole matter is one contract, made at one time, parol evidence, that a part was omitted, is not admissible, for that would be inconsistent with, and would affect the writing.

When the writing purports on its face, to contain the whole agreement, relative to its subject-matter, to add anything to it, is to alter and vary it. Suppose a farmer were to hire a laborer, at a specified rate of wages, for six months, from the first day of April, by a contract in writing; could the laborer prove by parol, that the agreement was for twelve months, and thus get the higher rate of wages during the winter? Such evidence would change the contract, as it appeared in the writing, and would make it less favorable to one of the parties than the written agreement. Now, the case before us is substantially the same. Wages were higher at San Francisco than at Calcutta; and to permit the mate to prove a contract to Boston, would make the owner pay a higher rate from Calcutta, and would thus injuriously vary his contract. So, if the reverse were the case, the mariner's contract would be changed to his injury, by parol evidence of an agreement to go farther, at the lower rate. But, in this case, another principle is applicable. Here there is a palpable defect in the written contract. It does not appear to contain the whole agreement. When the written contract is incomplete, on its face, and tacitly refers to parol evidence, such evidence may be admitted. By the shipping articles, the libellant agrees to go, as first mate, to Calcutta, but no wages are specified. Does that mean that he is to go for nothing? That certainly is not the inference to be drawn, in case of mariner's articles. When services are contracted for, and there is no expectation that the seaman will be better off, at the end of the voyage, it is not to be inferred, that his services were to be gratuitous. Compensation was to be made. But that part of the agreement which determined the amount was not reduced to writing, and may be proved by parol. It may be said, that by the agreement, as proved, the mate was to receive $50 a month, and, therefore, we may allow that amount, until the vessel arrived at Calcutta, without admitting parol evidence of the voyage to Boston. But that would not be a true view of the evidence. The rate of wages at San Francisco was more than $50 to Calcutta, but less from that place to Boston. And a part of the compensation to the mate, for going to Calcutta, was the promise of the same rate of wages to Boston. And this part of his compensation is provable, at the same time, and by the same evidence, as the other; both being embraced in one contract. Wages to Boston were an essential part of the consideration; and if the parol evidence come in at all, it must come in to show the exact consideration. Such evidence being then admitted, it is proved very clearly, that the contract was, as is alleged by the libellant, for a voyage from San Francisco, via Calcutta, to Boston.

The libel is sustained, and I decree wages to Boston, with the expenses incurred in Calcutta, and interest up to the date of the decree. I shall not deduct the money earned by the libellant, on his return. It is true, a mariner discharged, under such circumstances, is not at liberty to aggravate the damages for which the owners are liable, by incurring unnecessary expenses, or refusing to earn wages on his homeward passage, when proper opportunity is offered. If this libellant could have had the situation of mate in a vessel home, he might have been bound to accept it; but he was under no obligation to serve as a common sailor, and the owners had no claim to a deduction, by reason of wages so earned. Indeed, he might have taken a cabin passage, at their expense. Allowing him wages, and his expenses, up to the time of his reaching Boston, will not be more than an indemnity.

The libel against the master, depends on the same state of facts, and rests on the ground that a wrong has been committed, for which the libellant is entitled to a remedy against the master, but not against the owners.

The question, then, comes to this: Can he recover anything against the master, which he could not recover against the owners? What is there against the master? Nothing but the violation of the contract.

[If a libellant were a passenger to Calcutta without the rights reserved to a mariner to return home, he might have been put ashore without wrong. There was no other wrong, violence, or injury, except the violation of the contract.] [2]

The master said the contract was at an end, and that the libellant should remain at Calcutta, and left him to take the consequences. But it was not at an end; and being a contract with the owners, made through their agent, they are liable for all the damages sustained by its violation; and there is, in this case, no ground for any additional claim against the master.

[Now the contract of the owners with the mariner was not merely to pay wages in consideration of his services but to provide him with board on their vessel and that he should continue the voyage to the United States, and if this was not complied with, he is entitled to an adequate compensation from them for the damages resulting from the violation of their contract, including his expenses at Calcutta and for his return home. And this would cover all the damages he seems to have sustained.] [2]

[2] [18 Law Rep. 99.]

I shall dismiss this libel, therefore; and, as it was unnecessarily brought, I shall decree sufficient costs to the respondent, to compensate for the trouble of filing the answer, but no more.

In the first suit, decree for the libellant, for $600, the amount claimed, and costs. In the second, libel dismissed, with $10 costs to the respondent.

This decree was affirmed. upon appeal. See Page v. Sheffield [Case No. 10,667].

NOTE. As to rate of wages left blank in shipping articles, and supplied by parol. see Wickham v. Blight [Case No. 17,611]; The Harvey, 2 Hagg. Adm. 79: The Prince George, 3 Hagg. Adm. 376; The Warrington [Case No. 17,208]. As to the measure of indemnity, see Hunt v. Colburn [Id. 6,886].